UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO. _____

GWENDOLYN THOMPSON,

    Plaintiff,

v.

MAGICAL CRUISE COMPANY, LIMITED
d/b/a Disney Cruise Line, and VANTER
CRUISE HEALTH SERVICES, INC.,

    Defendants.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff sues MAGICAL CRUISE COMPANY, LIMITED d/b/a Disney Cruise Line and VANTER CRUISE HEALTH SERVICES, INC. and alleges:

### PRELIMINARY ALLEGATIONS

1. The Plaintiff, GWENDOLYN THOMPSON, is a citizen of North Carolina.

2. Defendant, MAGICAL CRUISE COMPANY, LIMITED d/b/a Disney Cruise Line (hereinafter "DISNEY") is a foreign corporation incorporated in London, England which has its worldwide headquarters and principal place of business in Celebration, Florida.

3. Defendant, VANTER CRUISE HEALTH SERVICES, INC. ("VANTER"), is a foreign corporation incorporated in the Bahamas which has its headquarters and principal place of business in Alexandria, Virginia.

- 2 -

4. The matter in controversy exceeds, exclusive of interest and costs, the sum specified by 28 U.S.C. § 1332. As such, this matter falls under the Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332.  Further, this matter is being filed in the United States District Court for the Middle District of Florida, as required by the forum selection clause contained within the Cruise Ticket Contract issued by Defendant, DISNEY.

5. At all times material hereto, Defendants, personally or through an agent:

    a. Operated, conducted, engaged in or carried on a business venture in this state and/or county or had an office or agency in this state and/or county;

    b. Was engaged in substantial activity within this state;

    c. Operated vessels in the waters of this state;

    d. Committed one or more of the acts stated in Florida Statutes §§ 48.081, 48.181 or 48.193;

    e. The acts of Defendant set out in this Complaint occurred in whole or in part in this county and/or state; and/or

    f. Issued a cruise line ticket to the Plaintiff that requires that suit be brought in this Court against the named Defendant in this action.

6. Defendants are subject to the jurisdiction of the courts of this state.

7. The causes of action asserted in this Complaint arise under the General Maritime Law of the United States.

## FACTS COMMON TO ALL COUNTS

8. At all times material hereto, Defendant owned, operated, managed, maintained and/or controlled the subject vessel, *Disney Wonder*.

9. At all times material hereto, Defendant DISNEY had exclusive custody and control of the *Disney Wonder*, including the onboard medical center.

10. On or about September 8, 2022, the Plaintiff was a paying passenger aboard the *Disney Wonder*, which at all times material was in navigable waters.

11. At all times material hereto, Defendant VANTER provided health care services for the cruise line industry including Defendant DISNEY. Defendant VANTER recruited, vetted, and screened medical personnel. Defendant VANTER provided medical management and oversight for onboard medical care, serving as a resource for onboard medical staff, and actively provided administrative support based on a team approach with shipboard management, onboard medical staff and the cruise line's shoreside operation group and management.

12. At all times material hereto, Defendant DISNEY entered into a contractual agreement with Defendant VANTER to recruit, vet, screen, oversee, collaborate, and work directly with Defendant DISNEY for the provision of onboard medical services provided to passengers and crewmembers, including the Plaintiff.

13. On or about September 8, 2022, while aboard the *Disney Wonder*, the Plaintiff slipped and fell while stepping over the cabin shower's unreasonably high threshold. The Plaintiff attempted to break her fall by holding on to the handlebar, but it was loose.

14. As a result, the Plaintiff fell and severely injured her right knee, requiring assistance to get up.

15. The ship's nurse arrived to the Plaintiff's cabin, and required the Plaintiff to walk despite the Plaintiff's statements that she was unable to.

16. At the medical center, VANTER'S ship physician evaluated the Plaintiff and diagnosed her with a right knee sprain.

17. Additionally, VANTER'S ship physician advised the Plaintiff to seek medical attention upon disembarkation to rule out a torn ligament, yet advised the Plaintiff she could bear weight on her right knee.

18. Upon disembarkation, Plaintiff sought medical care and discovered that she sustained a complete anterior complete ligament (ACL) tear, a Baker's Cyst, a meniscus tear, and a right knee fracture.

19. As a result of this misdiagnosis and resulting medical advice received onboard, the Plaintiff spent several days aboard the vessel bearing weight on her right knee thereby causing her injuries, additional pain, exacerbating the injury, and causing a delay in healing.

20. The hazardous conditions were not open and obvious and there was nothing the Plaintiff could have done to have prevented her incident.

**COUNT I – NEGLIGENT FAILURE TO WARN AGAINST DISNEY**

Plaintiff re-alleges, adopts and incorporates by reference the allegations in paragraphs one (1) through twenty (20) as though alleged originally herein.

21. At all times material hereto, it was the non-delegable duty of Defendant to provide Plaintiff with reasonable care under the circumstances.

22. At all times material hereto, it was the non-delegable duty of Defendant to warn passengers (like Plaintiff) of dangers that were known, or reasonably should have been known, to Defendant in places where passengers (like Plaintiff) are reasonably expected to be.

23. On or about September 8, 2022, Plaintiff was in her cabin, which is a place that Defendant reasonably expected Plaintiff to be in during the cruise.

24. On or about September 8, 2022, Defendant through its crew, agents, employees, staff or representatives breached its duty to warn Plaintiff in one or more of the following ways:

    a. Failure to warn passengers and the Plaintiff of the dangerous condition;

    b. Failure to adequately warn the Plaintiff of slipping hazards in the subject area;

    c. Failure to warn passengers and the Plaintiff of the dangers of walking on wet or damp areas in the subject area that could cause injury;

    d. Failure to adequately warn the Plaintiff of the dangerous and/or defective conditions of the handlebars in the subject area and the associated risks;

    e. Failure to adequately warn the Plaintiff of the lack and/or inadequacy of handrails located in the subject area and the associated risks and/or dangers;

    f.  Failure to adequately warn the Plaintiff of the hazard(s) posed to her, due to improper and/or inadequate, maintenance and/or inspection of the subject area including the handlebars;

    g.  Failure to adequately warn passengers and the Plaintiff of other slip and fall accidents previously occurring in same manner and/or area;

    h.  Failure to adequately warn passengers of the unreasonably high changes in elevation in the subject area;

    i.  Failure to place signs in the subject area(s) so as to warn passengers and the Plaintiff of its unsafe and inconspicuous cabin and unreasonably dangerous thresholds.

25. The above acts and/or omissions caused or contributed to the Plaintiff being severely injured because Plaintiff would not have been injured had Defendant adequately warned the foregoing to the Plaintiff.

26.  At all times material hereto, Defendant knew of the foregoing conditions causing the Plaintiff's accident and did not warn about them. Defendant's knowledge of the dangerous condition(s) was specifically acquired through (a) its cleaning and inspection of the subject area prior to this incident, and/or (b) prior incidents causing personal injury to Defendant's passengers involving the same or similar slipping hazards aboard its vessels, including the subject vessel.  Alternatively, the foregoing hazardous conditions existed for a sufficient length of time so that Defendant, in the exercise of reasonable care under the circumstances, should have learned of them and warned about them.

- 6 -

LIPCON, MARGULIES & WINKLEMAN, P.A.

27. As a direct and proximate result of the negligence of Defendant, Plaintiff was injured about Plaintiff's body and extremities, suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of Plaintiff's injuries and suffered physical handicap. The injuries are permanent or continuing in nature, and Plaintiff will suffer the losses and impairments in the future. In addition, Plaintiff lost the benefit of Plaintiff's vacation, cruise, and transportation costs.

**WHEREFORE**, the Plaintiff demands a trial by jury for all damages recoverable under the law.

**COUNT II – NEGLIGENT FAILURE TO MAINTAIN AGAINST DISNEY**

Plaintiff re-alleges, adopts and incorporates by reference the allegations in paragraphs one (1) through twenty (20) as though alleged originally herein.

28. At all times material hereto, it was the non-delegable duty of Defendant to provide Plaintiff with reasonable care under the circumstances.

29. At all times material hereto, it was the non-delegable duty of Defendant to maintain its cabins in a reasonably safe condition.

30. On or about September 8, 2022, Defendant through its crew, agents, employees, staff or representatives, who were acting in the course and scope of their employment or agency with the Defendant, breached its duty in one or more of the following ways:

    a. Failure to maintain the subject area in a reasonably safe condition free of slipping hazards;

    b. Failure to adequately inspect and maintain the subject area so that they could be used in a reasonably safe manner and they would be free of dangerous and/or defective condition(s);

    c. Failure to adequately and regularly inspect the subject area to determine whether the subject threshold was unsafe;

    d. Failure to adequately and regularly inspect the subject area to determine whether the subject handlebars were unsafe;

    e. Failure to adequately and regularly maintain the subject area to determine whether adequate markings and/or warnings were in place for passengers like Plaintiff;

    f. Failure to maintain the subject area in a reasonably safe condition in light of the anticipated use by passengers like Plaintiff;

    g. Failure to provide aids such as a seating bench in light of the anticipated unreasonably high threshold; and/or

    h. Failure to provide additional and/or adequate handlebars and railings for passengers in the subject area in light of the intended purpose of the subject area.

31. The above acts and/or omissions caused or contributed to the Plaintiff being severely injured because Plaintiff's incident would not have occurred but for Defendant's failure to adequately inspect and maintain the subject area.

- 8 -

L I P C O N ,   M A R G U L I E S   &   W I N K L E M A N ,   P . A .

32. At all times material hereto, the subject area was not adequately maintained or inspected so that passengers, including the Plaintiff, could use it in a reasonably safe manner, thereby creating a dangerous and hazardous condition.

33. At all times material hereto, Defendant knew of the foregoing conditions causing the Plaintiff's accident and did not adequately maintain the subject area. Defendant's knowledge of the dangerous condition(s) was specifically acquired through (a) its cleaning and inspection of the subject area prior to this incident, and/or (b) prior incidents causing personal injury to Defendant's passengers involving the same or similar slipping hazards aboard its vessels, including the subject vessel. Alternatively, the foregoing hazardous conditions existed for a sufficient length of time so that Defendant, in the exercise of reasonable care under the circumstances, should have learned of them and adequately maintained the subject area.

34. As a direct and proximate result of the negligence of Defendant, Plaintiff was injured about Plaintiff's body and extremities, suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of Plaintiff's injuries and suffered physical handicap. The injuries are permanent or continuing in nature, and Plaintiff will suffer the losses and impairments in the future. In addition, Plaintiff lost the benefit of Plaintiff's vacation, cruise, and transportation costs.

**WHEREFORE**, the Plaintiff demands a trial by jury for all damages recoverable under the law.

## COUNT III – NEGLIGENCE AGAINST DISNEY

Plaintiff hereby incorporates by reference, as though fully set forth herein, paragraphs one (1) through twenty (20), and alleges as follows:

35. At all times material, Defendant through its employees, servants, agents, and/or representatives acting within the course and scope of their employment, owed the Plaintiff A non-delegable duty to exercise reasonable care under the circumstances as required of an ocean common carrier for the safety of a fare-paying passenger.

36. Alternatively, at all material times, Defendant and/or its employees engaged in certain affirmative undertakings, as hereafter alleged, and in doing so acquired a duty to exercise reasonable care in those undertakings.

37. On or about September 8, 2022, Defendant and/or its agents, servants, joint venturer's and/or employees, breached its duty to provide the Plaintiff with reasonable care under the circumstances, and was negligent and careless by committing the following acts and/or omissions including but not limited to:

   a. Failing to provide the Plaintiff with a reasonably safe cabin bathroom;

   b. Failure to provide aids such as a seating bench in light of the anticipated unreasonably high threshold;

   c. Failure to provide additional and/or adequate handlebars and railings for passengers in the subject area in light of its intended purpose;

- 10 -

L I P C O N ,   M A R G U L I E S   &   W I N K L E M A N ,   P . A .

d.  Failing to identify and correct the unreasonably dangerous, defective conditions in the subject area;

e.  Failing to promulgate and/or enforce adequate policies and procedures aimed at ensuring that the dangerous, defective condition(s) and/or slipping hazard(s) which caused Plaintiff's incident would be discovered and corrected;

f.  Failure to have a non-slip materials or a non-skid flooring surface in the subject area in light of its intended purpose;

g.  Failing to adequately equip the subject area with handrails and/or handlebars to assist passengers, including Plaintiff, in traversing unreasonably high thresholds;

h.  Failing to promulgate and/or enforce adequate policies and procedures aimed at warning passengers, and Plaintiff in particular, of the unreasonably dangerous, defective conditions and/or slipping hazards that caused Plaintiff's injury;

i.  Failing to use reasonably safe flooring materials in the subject area;

j.  Failing to promulgate and/or enforce adequate policies and procedures aimed at maintaining the Defendant's vessel in a reasonably safe condition for passengers;

k.  Failing to analyze prior slip-and-fall accidents aboard Defendant's vessels occurring in the same manner and/or area so as to remedy such dangerous and/or hazardous conditions;

   l. Failure to correct dangerous and/or hazardous conditions following other slip and fall accidents which occurred in the same area and/or similar areas on Defendant's vessels; and/or

   m. Failure to have and implement adequate risk management procedures in place designed to reduce the occurrence of the type of accident suffered by the Plaintiff.

38.    At all material times, Defendant had exclusive custody and control of the subject vessel.

39.    At all material times, Defendant negligently failed to determine, eliminate, modify, correct, or warn the Plaintiff of the dangerous and hazardous condition which resulted in her injuries. Defendant violated the International Safety Management Code and failed to have a proper, adequate and safe Safety Management System Manual and/or failed to properly implement the Safety Management System Manual aboard the vessel.  All of which caused the Plaintiff to be injured.

40.    Defendant knew of the foregoing conditions causing Plaintiff's accident and did not correct them, or the conditions existed for a sufficient length of time so that Defendant in the exercise of reasonable care under the circumstances should have learned of them and corrected them.

41. As a result of the negligence of Defendant, the Plaintiff was injured about her body and extremities, suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, aggravation of any previously existing

conditions therefore, incurred medical expenses in the care and treatment of Plaintiff's injuries and suffered physical handicap. The injuries are permanent and continuing in nature, and Plaintiff will suffer the losses and impairments in the future. In addition, Plaintiff lost the benefit of her vacation, cruise, and transportation costs.

**WHEREFORE**, the Plaintiff demands a trial by jury for all damages recoverable under the law.

### COUNT IV – NEGLIGENCE AGAINST VANTER FOR THE ACTS OF ITS MEDICAL PERSONNEL BASED ON A THEORY OF VICARIOUS LIABILITY UNDER *RESPONDEAT SUPERIOR*

Plaintiff hereby incorporates by reference, as though fully set forth herein, paragraphs one (1) through twenty (20), and alleges as follows:

42. At all times material hereto, VANTER owned, operated, controlled, and/or maintained the medical center aboard the *Disney Wonder*, and was responsible for overseeing the operations of the shipboard medical center including the selecting, purchasing, and maintaining of the medical equipment and medications contained therein; recruitment, credentialing and staffing of shipboard medical centers with physicians and nurses; evaluations, training and coaching of shipboard physicians; and acting as a resource to the shipboard medical personnel and providing guidance and instruction in the event of a medical emergency in said medical center.

43. At all times material, the medical personnel was comprised of the ship's doctor(s) and nurses aboard the vessel *Disney Wonder* for the subject

voyage.

44.  At all times material, the ship's medical personnel was employed by VANTER which was therefore vicariously liable for the negligent treatment of Plaintiff under the legal principles under *respondeat superior* and the principles set forth in *Franza v. Royal Caribbean Cruise Ltd.*, 772 F.3d 1225 (11th Cir. 2014).

45. At all times material hereto, the medical personnel was in the regular, full time employment of the ship, as a salaried member of the crew, were identified as officers of the vessel, subject to the ship's discipline and the Master's orders, and also under the control of VANTER shoreside Medical Department, Medical Director and Medical Officer located in Miami, Florida through modern means of communication such as "Face-to-Face Telemedicine."

46.  At all times material, VANTER acknowledged that its medical personnel would act on VANTER's behalf, and the medical personnel accepted the undertaking.

47. At all times material hereto, VANTER controlled and/or maintained the right of control over its medical personnel and other medical personnel working in its medical center in the exercise of their job duties, including the treatment of patients. VANTER exercised such control and/or right of control in many different ways, including, but not limited to the following:

   a. Setting the standards, criteria and procedures for selecting and hiring said personnel;

   b. Credentialing, evaluating, training and coaching shipboard medical

personnel;

c. Acting as a resource to the shipboard medical personnel and providing guidance and instruction in the event of a medical emergency;

d. Establishing, adopting and enforcing rules, regulations and protocols for the treatment of patients at its medical center;

e. Maintaining and/or exercising the right to both hire and fire said personnel;

f. Establishing the amount, method and manner of payment for said personnel;

g. Paying a salary, bonus and benefits to said personnel;

h. Establishing and enforcing the terms of employment for such personnel, including their hours, job duties and the details of their work;

i. Setting the standards and criteria to determine which patients were to be treated by said personnel;

j. Determining and setting the specific charges for treatment for its passengers and requiring that all such charges be paid directly to Defendant on the passenger's shipboard charge card;

k. Supplying the tools, workplace and equipment for said personnel to perform their job duties;

l. Determining and selecting the medications, drugs and supplies to be used in the ship's medical center; purchasing said medications, drugs and supplies to stock the medical center; setting the prices for the use and or

sale of such medications, drugs and supplies to passengers and requiring the passengers to pay it directly for such medical, drugs and supplies on their shipboard charge cards;

m. Advertising the existence of the medical center as part of its marketing campaigns in order to attract passengers

n. Treating said personnel as members of its crew, subject to the vessel's rules and regulations and the authority of its officers and requiring them to carry out crew functions and wear crew uniforms;

o. Requiring said personnel to take specific courses and training, including those offered by VANTER;

p. Agreeing to staff, equip and operate the medical facilities and the provision of medical services therein under the industry Guidelines issued by the American College of Emergency Physicians and requiring its medical personnel to practice medicine and treat patients in accordance with the requirements of said Guidelines;

q. Through the use of its shore side medical department, which is staffed with various doctors and other medical personnel that can communicate with its ships literally anywhere in the world electronically;

r. By entering into contracts with various land based hospitals provide medical expertise and requiring their shipboard medical personnel to utilize such services in the treatment of passengers and crew in specified situations;

    s. Through the use of electronic technology, including video-conferencing and tele-medicine with their shoreside medical department and hospital contract providers to control the treatment provided;

    t. By requiring its Medical Department to supervise medical staff and other personnel working in its medical center; and

    u. In other manners that are expected to be determined in continuing discovery and investigation.

48.    VANTER is vicariously liable under the principles of *respondeat superior*, for the acts and omissions of its employees, servants, actual agents, ostensible agents, and/or representatives, including but not limited to its medical personnel, and breached its duty to exercise reasonable care under the circumstances owed to the Plaintiff as follows:

    a. Failing to properly conduct a comprehensive work-up when the Plaintiff first presented to the infirmary;

    b. Failing to consider and explore other potential diagnoses given the Plaintiff's symptoms to establish a differential diagnosis(es) given the Plaintiff's multiple symptoms and conditions;

    c. Failing to proactively treat the Plaintiff with adequate medications in light of the Plaintiff's multiple symptoms and conditions;

    d. Failing to perform serial evaluations to properly monitor, diagnose and treat the Plaintiff's conditions and symptoms;

    e. Failing to recognize and appreciate the seriousness and gravity of the

      Plaintiff's condition when she first presented given her symptoms and comorbidities;

  f. Negligently manipulating the Plaintiff's right knee given the seriousness and gravity of the Plaintiff's condition;

  g. Negligently delaying consultation with an appropriate shoreside specialist(s) when the Plaintiff presented to the medical center in critical condition;

  h. Failure to timely and/or properly assess and diagnose the Plaintiff and identify emergent, urgent conditions of the Plaintiff in a timely manner, in order to facilitate optimum levels of health care;

  i. Failure to practice medicine according to generally accepted standards of care;

  j. Failure to adhere and refer to VANTER's policies and procedures;

  k. Failure to adhere to industry standards including but not limited to the American College of Emergency Physicians Cruise Ship Guidelines; and/or

  l. Breaching the prevailing professional standard of care for said health care providers, to wit: that level of care, skill and treatment which, in light of all relevant surrounding circumstances as recognized as acceptable and appropriate by a reasonably prudent similar health care provider.

49.     At all times material, VANTER breached its duty to provide the Plaintiff with reasonable care under the circumstances through the above acts of

its agents and/or employees and/or servants.

50.     The negligence of the Defendants was so far below the standard of care that it constitutes wanton, willful, or outrageous conduct that entitles the Plaintiff to punitive damages.

51. As a result of the negligence of Defendant, the Plaintiff was injured about her body and extremities, suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, aggravation of any previously existing conditions therefore, incurred medical expenses in the care and treatment of Plaintiff's injuries and suffered physical handicap. The injuries are permanent and continuing in nature, and Plaintiff will suffer the losses and impairments in the future. In addition, Plaintiff lost the benefit of her vacation, cruise, and transportation costs.

**WHEREFORE**, the Plaintiff demands a trial by jury for all damages recoverable under the law.

Dated: August 31, 2023.

                                                         Respectfully submitted,

                                                         LIPCON, MARGULIES
                                                         & WINKLEMAN, P.A.
                                                         *Attorneys for Plaintiff*
                                                         2800 Ponce de Leon Blvd, Suite 1480
                                                         Miami, Florida 33134
                                                         Telephone No.: (305) 373-3016
                                                         Facsimile No.: (305) 373-6204

                                       By:  */s/ Stefanie A. Black*
                                              **MICHAEL WINKLEMAN**
                                              Florida Bar No. 36719

mwinkleman@lipcon.com
**STEFANIE A. BLACK**
Florida Bar No. 111903
sblack@lipcon.com